# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NORMAN  T. MERKEL,

        Plaintiff,

vs.                                                                No. CIV 03-1312 JB/WDS

UNITED STATES OF AMERICA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Dismiss, filed April 13, 2004 (Doc. 8); and (ii) the Defendant's Motion for Entry of Default Judgment, filed May 4, 2004 (Doc. 11).  The Court held a hearing on these motions on July 14, 2004.  The primary issue is whether the Court has jurisdiction under the Federal Tort Claims Act to entertain a claim based on wrongful or retaliatory discharge against the federal government.  Because the Court finds that the United States has not waived sovereign immunity for intentional torts, this Court does not therefore have jurisdiction over Plaintiff Norman T. Merkel's claims, and the Court will grant the motion to dismiss in part.  The Court will deny the United States' motion for rule 11 sanctions and for a default judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Nicholas Garcia and Fernando Abeita are employees of the United States Department of the Interior, Bureau of Indian Affairs.  Merkel brought a <u>Bivens</u> lawsuit against Garcia and Abeita, individually, alleging that the two federal employees intentionally retaliated against him because of the exercise of his free speech right to state that he might submit a safety report.  <u>See</u> <u>Norman T.</u>

Merkel v. Fernando Abeita, Nicholas Garcia, Pierce Aviation, Inc., James O. Pierce, and Kinney McKinney, No. Civ. 02-1596 (D.N.M., filed December 19, 2002). In the Bivens lawsuit, which was based on the same facts and circumstances as this case, Merkel averred that the federal employees intentionally conspired with Merkel's employer, Pierce Aviation, and thus caused Pierce Aviation to fire him in retaliation for Merkel's statement to Garcia that he was going to file a safety report. At a March 24, 2004 hearing on a motion for summary judgment in that case, the Court orally announced its decision to dismiss the case for failure to establish a constitutional violation of Merkel's right to freedom of speech. The Court specifically relied on Merkel's failure to present evidence of the third element in the Pickering balancing test: whether his speech was a substantially motivating factor of the actions that the Defendants took against him. The Court thereafter entered a Memorandum Opinion and Order dismissing Merkel's claims. See Merkel v. Abeita, et al., No. Civ. 02-1596, Memorandum Opinion and Order, filed May 28, 2004 (Doc. 56).

Merkel brings this action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 (b) and 2671-2680. Merkel's Complaint charges that the United States, by and through the actions of its two employees, "negligently ma[de] up a false report about Plaintiff's conduct in order to cause Plaintiff's removal as a pilot from New Mexico." Complaint for Violations of the Federal Tort Claims Act ¶ 9, at 4, filed November 13, 2003 (Doc 1)("Complaint"). Merkel appears to have substituted the word "negligently" where in his previous lawsuit he used the term "intentional conspiracy." The United States has filed a motion to dismiss the claims against it.

## STANDARDS ON A MOTION TO DISMISS

The United States moves to dismiss Merkel's claims pursuant to rules 12(b)(1) and 12(b)(6). Rule 12(b)(1) allows a defendant to move for the dismissal of an action for "lack of jurisdiction over

the subject matter."  In a motion to dismiss for lack of subject matter jurisdiction under rule 12(b)(1), a party may go beyond the allegations contained in the complaint and challenge the facts upon which jurisdiction depends.  See Sizova v. National Institute of Standards & Technology, 282 F3d 1320, 1324-25 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  A rule 12(b)(1) motion to dismiss can challenge the substance of the complaint's jurisdictional allegation by relying on affidavits or any other evidence properly before the court.  See Sizova v. National Institute of Standards & Technology, 282 F. 3d at 1324-25; New Mexicans for Bill Richardson v. Gonzales, 64 F. 3d 1495 (10th Cir. 1995).

Rule 12(b)(6) allows a motion to dismiss for "failure to state a claim upon which relief may be granted."  In considering a motion to dismiss under rule 12(b)(6), the Court must first "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party."  Realmonte v. Reeves, 169 F.3d 1280, 1283 (10th Cir. 1999).  A dismissal is proper only "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief."  Mock v. T.G.& Y. Stores, Inc., 971 F.2d 522, 529 (10th Cir. 1992).  In evaluating those facts, Merkel receives the benefit of not only the facts pleaded, but the Court "must liberally construe the pleadings and draw all reasonable inferences in favor of the plaintiff."  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 510 (10th Cir. 1998).

## FEDERAL TORT CLAIMS ACT

The starting point for claims against the United States government is the FTCA.  In enacting the FTCA of 1946, Congress relinquished the shield from tort liability that the United States government had enjoyed under the doctrine of sovereign immunity.  For the first time, Congress granted general consent to sue for a government employee's negligent or wrongful act.

When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction.  See United States v. Mottaz, 476 U.S. 834, 841 (1986). 28 U.S.C. § 1346(b)(1) states that the United States is responsible:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Congress severely curtailed, however, the scope of the waiver in § 2680(h) of the FTCA by providing exceptions to the general waiver of sovereign immunity.

The United States has not, therefore, waived its sovereign immunity for claims arising out of conduct that falls into one of the excepted categories.  In part, 28 U.S.C. § 2680 of the FTCA provides:

> The provisions of this chapter and section 1346(b) of this title shall not apply to – (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
>
> * * * *
>
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.  For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

The Supreme Court of the United States held in <u>Rayonier v. United States</u>, 352 U.S. 315 (1957): "There is no justification for this Court to read exemptions into the Act beyond those provided by Congress.  If the Act is to be altered that is the function for the same body that adopted it."  <u>Id.</u> at 320.

## 1.    <u>Congress has not Waived Immunity for Intentional Torts.</u>

In <u>Naisbitt v. United States</u>, 611 F.2d 1350, 1355 (10th Cir. 1980), the United States Court of Appeals for the Tenth Circuit relied on § 2680(h)'s language in stating: "[T]he government has waived liability only in negligence cases and has retained its immunity in intentional tort cases."  In <u>Wine v. United States</u>, 705 F.2d 366, 367 (10th Cir. 1983), the Tenth Circuit reaffirmed the rule that a plaintiff may not circumvent immunity from suits for intentional torts retained by § 2680(h) by merely couching a complaint in terms of negligence.  <u>See also</u> <u>Bergman v. United States</u>, 567 F. Supp. 460, 463 (D. Colo. 1983).  At the hearing on this motion, the Court quoted the language from both <u>Naisbitt</u> and <u>Wine</u> regarding the United States' retention of immunity in intentional torts cases. <u>See</u> Transcript of Hearing at 24:23 - 25:7.[1]  The Court asked counsel for Merkel whether he could see any way around that binding language.  <u>See id.</u> at 25:14-15.  Counsel for Merkel conceded that he was unable to provide the Court with any case law or argument countering the position that the United States has retained its sovereign immunity for causes of action based on intentional torts.  <u>See</u> <u>id.</u> at 25:15-16.

Merkel points to <u>Petrini v. Howard</u>, 918 F.2d 1482 (10th Cir. 1990), as an analogous case, asserting that the Tenth Circuit allowed an employee to sue the United States for intentional infliction

[1] The Court's citations to the transcript of the hearing refer  to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

of emotional distress.  In <u>Petrini v. Howard</u>, however, the Tenth Circuit did not actually hold that the FTCA allows a claim for intentional infliction of emotional distress but, rather, held that "plaintiff's defamation and intentional infliction of emotional distress claims . . . should be remanded to allow the district court to determine . . . whether these claims can be maintained as claims against the United States under the FTCA."  <u>Id.</u> at 1485.

## 2.     Interference-with-Contractual-Relations Exception

Section 2680(h) bars any claim arising out of interference-with-contract rights.  In <u>Baca v. United States</u>, 467 F.2d 1061 (10th Cir. 1972), the plaintiffs, employees, brought a claim against the United States contending that it had caused Sandia Corporation, their employer, to fire them and that the government was thus responsible for Sandia's actions.  <u>See id.</u> at 1064.  The plaintiffs alleged that the United States had negligently exercised oversight responsibility.  The Tenth Circuit noted: "The trial court was of the opinion that the complaint did not allege that the Sandia Corporation 'was an instrumentality of the United States,' and therefore 'does not state a claim against the United States.'" <u>Id.</u> at 1062.  The district court allowed the plaintiffs to amend  their complaint, which they did, to allege that Sandia Corporation acted as an instrumentality or agency of the United States.  The district court then dismissed the case.  The Tenth Circuit pointed out: "To state a cause of action in a suit against the defendants, plaintiffs must bring themselves within the sovereign grant of permission to sue, and without the statutory exceptions retained."  <u>Id.</u> at 1063.  The Tenth Circuit thus affirmed the district court's dismissal of plaintiffs' claims.  It is not clear whether the Tenth Circuit's ruling relied on a holding that § 2680's interference-with-contract exception barred the claim, or that holding was an alternative ground stated in support of the decision that the complaint did not sufficiently state a claim against the United States.  <u>See id.</u> at 1063-64.

The federal courts have construed the "contract rights" language broadly. The Honorable Alan B. Johnson, United States District Judge, has held that, where a plaintiff accuses the United States of tortious interference with a "prospective pecuniary advantage," § 2680(h) bars the claim. Holmes Herefords, Inc. v. United States, 753 F. Supp. 901, 905-906 (D. Wyo. 1990). Another court has held that, where the claim of alleged interference accuses the United States of abrogating the plaintiff's ability to seek future employment, § 2680(h) bars the claim. See Bell v. United States, 635 F. Supp. 638, 642 (E.D. Va. 1986).

Courts will closely examine claims that the United States "negligently" interfered with employment rights. In Duncan v. United States, 355 F. Supp. 1167 (D.D.C. 1973), the court dismissed litigation averring that the United States, through the Federal Aviation Administration, caused an airline pilot to lose his job because it negligently failed to issue him a medical certificate. See id. at 1170-71. The court found that the jurisdictional bar against tort suits based on interference with contract rights precluded the suit. See id.

In Shapiro v. United States, 566 F. Supp. 886 (E.D. Pa. 1983), the court found that the exception for interference with contract rights embodied in 28 U.S.C. § 2680(h) barred a former attorney for the Department of Labor from bringing an action against the United States for damages allegedly resulting from the government's negligence in failing to respond promptly to his request for a letter stating that his activities during his employment by the Department of Labor did not preclude him from performing certain work for his prospective employer, a private law firm. See id. at 887-89. And in Socialist Workers Party v. Attorney General of the United States, 463 F. Supp. 515 (S.D.N.Y 1978), the plaintiffs alleged, among other things, that the United States through its agents contacted the plaintiffs' employers for the "purpose of provoking hostility and discrimination" against SWP

members and to cause certain the employers to discharge certain members from teaching positions. Id. at 518. The United States requested dismissal, because the claims were in the nature of misrepresentation or deceit. The trial court denied the motion, holding that the United States cannot recharacterize the claims so as to artificially fit them within § 2680(h)'s exception. The court reasoned:

> The government contends that the claims regarding informant activity are barred by the exceptions in 28 USC § 2680(h) relating to claims arising out of the misrepresentation and deceit. The Government maintains that the deception of the informants in posing as SWP and YSA members in concealing their connection with the FBI renders the claims in this case ones for misrepresentation and deceit.
>
> The short answer to this argument is that plaintiffs are not suing on the torts of misrepresentation and deceit but upon prima facie or general intentional tort, invasion of privacy, trespass and conversion. The differences are not formal but essential. See Lambertson v. United States, 528 F.2d 441 (2nd Cir.), cert. denied, 426 U.S. 921 . . . (1976).
>
> The Supreme Court has specifically dealt with the type of problems here raised. The Court has noted that many torts other than misrepresentation and deceit involve elements of misrepresentation in the generic sense of the word, but has warned against any idea of bringing these other defined torts within the ambit of the misrepresentation and deceit exception in sec. 2680(h). United States v. Neustadt, 366 U.S. 696, 711 n. 26 . . . (1961).
>
> In the present case the gravamen of the claims is not misrepresentation or deceit, and the Government cannot be permitted to recharacterize the claims so as to artificially fit them within the exceptions of § 2680(h). See Black v. Sheraton Corp., 184 U.S. App. D.C. 46, 55, 564 F.2d 531, 540 (1977); Betesh v. United States, 400 F.Supp. 238, 241 n.2 (D.D.C. 1974).
>
> The Government also appears to argue that plaintiffs' claims, or some of them, are barred by the exception in § 2680(h) relating to interference with contract rights. Although there has been some discussion in various arguments of plaintiffs about a theory of interference with advantageous relationships, the causes of action pleaded in the Second Amended Complaint are clearly based on other theories.
>
> Insofar as plaintiffs Sell and Starsky claim loss of employment, it could be argued that this is a cause of action for interference with contract. However, the gravamen of

their claims is prima facie tort and invasion of privacy, even though the resulting injury may have been loss of an employment contract. Under these circumstances the exception does not apply. Black v. Sheraton Corp., supra.

463 F. Supp. at 527.

**3.      Discretionary Function Exception**

"The FTCA immunizes instrumentalities of the federal government from tort liability based on the performance of 'a discretionary function or duty on the part of a federal agency or an employee of the Government.'" Lopez v. United States, ___ F.3d ___, 2004 WL 1627291, * 1 (10th Cir. July 21, 2004)(quoting 28 U.S.C. § 2680(a)). The Court must consider a two-part test set forth by the Supreme Court when determining whether the discretionary function exception applies to the circumstances of the case at hand. The first part of the test is "whether the government function in question was 'discretionary,' meaning whether it was 'a matter of judgment or choice for the acting employee.'" Id. at *1 (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). If the Court finds that the function was discretionary, the second step is "whether it was the type of decision the discretionary function exception was designed to protect, namely one requiring the exercise of judgment based on considerations of public policy." Lopez v. United States, 2004 WL 1627291, * 1. "When making the second inquiry, we are not to consider the subjective intent of the particular actor or whether he or she was animated by a concern for public policy. Rather, we must consider whether the nature of the actions taken implicate public policy concerns, or are 'susceptible to public policy analysis.'" Id. (quoting United States v. Gaubert, 499 U.S. 315, 325 (1991)).

Merkel relies on Oman v. United States, 179 F.2d 738 (10th Cir. 1950), contending that it is similar to the case at hand. In Oman v. United States, the plaintiff complained that federal employees "wrongfully aided, allowed and encouraged other livestock operators to utilize the public

-9-

domain, upon which defendant had previously granted exclusive grazing privileges to plaintiffs . . .

." Id. at 739.  The Tenth Circuit held that, based upon this allegation, the plaintiff had a claim:

> Eliminating the claim arising out of misrepresentation, the tortious acts, if any, bringing this case within the jurisdiction of the federal courts, consist of aiding and encouraging other livestock owners to utilize the grazing lands adjacent to the lands owned in fee, and of aiding and directing similar acts, with intent to injure and destroy plaintiffs' exclusive grazing privileges, coupled with the refusal to cancel plaintiffs' predecessor's permits, on the grazing lands adjacent to the leaseholds.
>
> Such acts are not within the exception to the Tort Claims Act based upon discretionary functions.  No government employee is granted the discretion whether he shall induce or incite third persons to interfere with exclusive rights or privileges granted by the United States.  It may be that certain of defendant's employees would have had the discretionary authority to take steps to revoke or cancel plaintiffs' exclusive grazing privileges, but no such steps appear to have been taken in this case.  Had such steps been taken, the plaintiffs would have been afforded procedural safeguards which apparently were not available to them here.  It may also be that the regional grazier had the discretionary authority to refuse to issue grazing permits to transferees of base property, but, if so, the transferees were entitled to procedural safeguards which apparently were not afforded them in this case.  Moreover, the gist of this aspect of plaintiffs' action is the refusal to cancel the old permits, not the refusal to issue new ones, and as to that, the regional grazier would appear to have no discretion.

179 F.2d at 740-41 (footnotes omitted).

## NEW MEXICO LAW ON TORTIOUS INTERFERENCE WITH CONTRACT AND WRONGFUL DISCHARGE

Courts "resolve questions of liability under the FTCA in accordance with the law of the state where the alleged tortious activity took place."  Hoery v. United States, 324 F.3d 1220, 1222 (10th Cir. 2003).  The cause of action for retaliatory or wrongful discharge is a tort action.  The tort is very limited compared to an interference with contract claim, which requires a contract and an improper motive to harm the plaintiff or by improper means.  See Fikes v. Furst, 134 N.M. 602, 608-609, 81 P.3d 545, 551-52 (2003)("Thus for a claim based on an interference with an existing contract the

-10-

plaintiff must still prove that the defendant acted with an improper motive or improper means, but the improper motive need not be the sole motive."); Kelly v. St. Vincent Hospital, 692 P.2d 1350, 1356 (Ct. App. 1984).

The tort of retaliatory discharge derives from the 1983 decision of Vigil v. Arzola, 102 N.M. 682, 699 P.2d 613 (1983), rev'd on other grounds, 101 N.M. 687, 687 P.2d 1038 (1984). The Supreme Court of New Mexico in Vigil v. Arzola described the nature of this tort as follows: "For an employee to recover under this new cause of action, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn." Id. at 689, 699 P.2d at 620. New Mexico Uniform Jury Instructions 13-2304 sets out the elements of this tort:

> In this case you must [also] determine whether _____ (employee) was discharged in violation of public policy. It is the public policy of the State of New Mexico to [permit][encourage][prohibit] _____ (insert public policy relied on by plaintiff). If _____ (employee) was discharged because [he][she] _____ (insert conduct alleged to be cause of retaliatory discharge)[and if _____ (employee's) conduct which triggered the discharge was taken in furtherance primarily of a public interest rather than primarily a private interest], then the discharge was in violation of public policy and was wrongful.
>
> In determining whether _____ (employee) was discharged because [he][she] _____ (insert conduct alleged to be cause of retaliatory discharge), you must determine whether that conduct was a motivating factor in the decision to discharge [him][her]. A motivating factor is a factor that plays a role in the decision to discharge and without which the discharge would not have occurred. It need not be the only reason, nor the last nor the latest reason, for the discharge.

UJI Civ. 13-2304, NMRA 2004. "The tort of retaliatory discharge is an intentional tort[.]" Rhein v. ADT Auto., Inc., 122 N.M. 646, 654, 930 P.2d 783, 791 (N.M. 1996)(citing Chavez v. Manville Products Corp., 108 N.M. 643, 649, 777 P.2d 371, 377 (1989)).

The New Mexico courts have given guidance where to look to determine the public policy giving rise to the wrongful tort claim.  The Supreme Court in Vigil v. Arzola and the Court of Appeals in Weidler v. Big J Enterprises, Inc., 953 P.2d 1089, 124 N.M. 591 (Ct. App. 1997), indicated that legislative pronouncements as well as judicial decisions provide a source for determining public policy:

> One source we look to for statements of public policy is legislation.  Id.; National Trust for Historic Preservation v. City of Albuquerque, 117 N.M. 590, 593, 874 P.2d 798, 801 (Ct. App. 1994)("[A] common-law court may utilize the statute solely to demonstrate what is public policy; that public policy then forms the predicate for a common-law cause of action.").  Thus, if there is a statute prohibiting certain actions, we view that as a statement of public policy which may be used to support the common-law cause of action.  See Gandy v. Wal-Mart Stores, Inc., 117 N.M. 441, 442-44, 872 P.2d 859, 860-62 (1994); Michaels v. Anglo Am. Auto Auctions, Inc., 117 N.M. 91, 92-93, 869 P.2d 279, 280-81 (1994).

Weidler v. Big J Enterprises, Inc., 953 P.2d at 1095-96, 124 N.M. at 597-98.

The New Mexico courts have recognized the tort of retaliatory discharge when an employee is discharged for filing a worker's compensation action against his employer.  See Michaels v. Anglo American Auto Auctions, 117 N.M. 91, 94, 869 P.2d 279, 282 (1994).  The New Mexico courts have also recognized the tort of retaliatory discharge when an employer terminates an employee who criticized his employer's expenditure of public funds.  See Vigil v. Arzola, 102 N.M. at 684, 699 P.2d at 615.

Other courts have recognized the tort of wrongful discharge based upon public policies contained in various other federal statutes.  For example, in Adler v. American Standard Corp., 538 F. Supp. 572 (D. Md. 1982), the court held that the plaintiff could rely upon federal antitrust, tax, and corrupt practices as a source of public policy in a wrongful discharge case.  See id. at 578.  In Cloutier v. Great American and Pacific Tea Co., 121 N.H. 915, 436 A.2d 1140 (1981), the court

suggested it could find public policy in federal OSHA laws.  See 121 N.H. at 923, 436 A.2d at 1145.

In Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 685 P.2d 1081 (1984), the Supreme Court

of Washington held an employee could maintain a retaliatory discharge action if he could show that

his dismissal resulted from his instituting an accurate accounting system in compliance with the

federal Foreign Corrupt Practices Act of 1977.  See 102 Wash. 2d at 234, 685 P.2d at 1090.  In

Wheeler v. Caterpillar Tractor Co., 108 Ill.2d 502, 485 N.E.2d 372 (1985), the Illinois Supreme

Court permitted a plaintiff to base his public policy tort claim on the federal nuclear safety statute.

See also Authier v. Ginsberg, 757 F.2d 796, 800 (6th Cir. 1985)(holding that Congressional policy

statement, coupled with ERISA's detailed statutory provisions, provide public policy under Michigan

law); Hansen v. Gichner Systems Group, 831 F. Supp. 403, 406 (M.D. Pa. 1993)(recognizing a

public policy tort based on refusing to provide false information to a federal investigation); Faulkner

v. United Technologies Corp., 693 A.2d 293, 297 (Conn. 1997)(holding that federal law can be a

source of public policy for state public policy tort claim); Norris v. Hawaiian Airlines, Inc., 842 P.2d

634, 645-46 (Haw. 1992)(recognizing public policy tort based on FAA rule); Boyle v. Vista Eyewear,

Inc., 700 S.W.2d 859, 877-78 (Mo. 1985)(holding that the plaintiff can base public policy on refusing

to violate F.D.A. regulation concerning hardening and testing of lenses); Kulch v. Structural Fibers,

Inc., 677 N.E.2d 308, 320 (Ohio 1997)(holding the plaintiff could base public policy tort on discharge

or discipline for filing a complaint with OSHA).

The Supreme Court in Vigil v. Arzola held that retaliatory discharge claims are tort actions

and not contract actions.

> A majority of the courts expressly recognizing the cause of action have treated the
> employee's claim as one in tort.  Most have done so on the basis that the discharge
> contravenes some clear mandate of public policy.  See Adler v. American Standard

Corp.; Palmateer v. International Harvester Co.

We note that New Hampshire has qualified the principle announced in Monge v. Beebe Rubber Company.  The courts of that state now construe the Monge case to apply only in situations where an employee is discharged because he performed an act that public policy would encourage or refused to do that which public policy exception.  Howard v. Dorr Woolen Co., 120 N.H. 295, 414 A.2d 1273 (1980); Cloutier v. Great Atlantic & Pac. Tea Co., 121 N.H. 915, 436 A.2d 1140 (1981).

Because we focus primarily on the employer's duty to act in accordance with public policy, a cause of action sounding in tort provides a more appropriate rationale than one in contract.  Thus, we recognize the cause of action in tort.  See Comment, The Employment At Will Rule, 31 Ala. L. Rev. 421 (1980).

102 N.M. at 688, 699 P.2d at 619.

In New Mexico, if an employee has a cause of action arising from a contract, the employee may not bring a claim for wrongful discharge.  In Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp., 106 N.M. 19, 738 P.2d 513 (1987), the Supreme Court of New Mexico held:

[I]t has been held by the overwhelming weight of authority that the discharge of an employee in violation of his contract irrespective of the motive therefor constitutes only a breach of contract and not a tort. . . .  The only exception to the rule is where the wrongful discharge is tinctured with fraud.  But for obvious reasons motive for discharge alone does not partake of any of the elements necessary to constitute fraud."  Bottijliso v. Hutchison Fruit Co., 96 N.M. 789, 791, 635 P.2d 992, 994 (Ct. App. 1981)(quoting Odell v. Humble Oil & Ref. Co., 201 F.2d 123, 128 (10th Cir.), cert. denied, 345 U.S. 941 . . . (1953)).  The subsequent judicial recognition of the tort of retaliatory discharge in Vigil does not affect this proposition.

A retaliatory discharge cause of action was recognized in New Mexico as a narrow exception to the terminable at-will rule; its genesis and sole application has been in regard to employment at-will.  Vasquez v. Mason & Hanger-Silas Mason Co., No. CIV 85-0150 HB (D.N.M. Aug. 1, 1985)(WESTLAW, DCTU database, enter "Vasquez v. Mason").  The express reason for recognizing this tort, and thus modifying the terminable at-will rule, was "the need to encourage job security" for those employees not protected from wrongful discharge by an employment contract.  See Vigil, 102 N.M. at 688, 699 P.2d at 619.  Obviously, if an employee is protected from wrongful discharge by an employment contract, the intended protection afforded

-14-

by the retaliatory discharge action is unnecessary and inapplicable.

Our holding on this issue is also consistent with recent federal court interpretations of New Mexico law in cases addressing the scope and applicability of a retaliatory discharge action.  See, e.g., Vasquez (where employee is working under a union contract, no wrongful discharge action will lie against the employer because protection against wrongful discharge is already enjoyed by such employee); Salazar v. Furr's Inc., 629 F.Supp. 1403 (D.N.M. 1986)(if employee has protection either because of employment contract or through another cause of action, the tort is unnecessary and will not be recognized); accord Lamb v. Briggs Mfg., 700 F.2d 1092 (7th Cir. 1983)(judicially created retaliatory discharge action applies only to at-will employees and is not available to employees covered by contract).  We decline to extend the tort of retaliatory discharge beyond the limited context in which it has been recognized.

106 N.M. at 20, 738 P.2d at 515.  Thus, under Silva, an employee may not bring a claim for

retaliatory discharge if the employee has protection though another cause of action.

## FEDERAL RULE OF CIVIL PROCEDURE 11(b)(2)(3)

The United States asks the Court to award its costs in preparing this motion to dismiss

pursuant to Federal Rule of Civil Procedure 11(b).  Under rule 11:

By presenting the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).  Rule 11 establishes a procedure to follow when asking the court for sanctions

based on a violation of the standards set forth in subsection (b).  Subsection (c) provides: "A motion

for sanctions under this rule shall be made separately from other motions ore requests and shall

describe the specific conduct alleged to violate subsection (b)." Fed. R. Civ. P. 11(c)(1)(A).  It shall

-15-

be served, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, the challenged claim is not withdrawn or corrected.  See id.

## ANALYSIS

The United States argues that Merkel is attempting to avoid § 2680(h)'s bar against intentional torts by recasting his case against the United States as one for negligence.  This recasting is unavailing.  A court must not adopt facile averments of negligence that are brought to escape the import of the immunity provision.  Merkel's claims, as pled, are for an intentional tort and otherwise fall within the exceptions to the FTCA's waiver of immunity.  They are thus jurisdictionally barred.[2]

**I.    MERKEL'S CLAIMS ARE BASED ON AN INTENTIONAL TORT AND THUS BARRED BY § 2680.**

The FTCA's general waiver of immunity and § 2680 are a jurisdictional bars to intentional torts.  The United States thus moves to dismiss Merkel's claims under rule 12(b)(1) for lack of jurisdiction.  Merkel has not stated a jurisdictional basis under the FTCA for his claims based on wrongful or retaliatory discharge.

As noted above, the government's waiver of immunity under the FTCA does not include intentional torts.  Merkel urges the Court to recognize, adopt, and hold cognizable under the FTCA the New Mexico tort of wrongful and retaliatory discharge based on the facts of this case.  The Court believes that New Mexico public policy would prohibit an employer from firing an employee because of his complaints of unsafe flying practices.  The question before the Court is not, however, whether

_____

[2] Before the hearing on this motion, the Court asked the parties to be prepared to discuss the potential preclusive effect its prior ruling in Merkel v. Abeita might have on this action.  Based on the Court's holding that it is without jurisdiction to hear the merits of Merkel's claims against the United States, it need not determine whether the prior ruling also precludes Merkel's claims against the United States.

Merkel has stated an appropriate claim for wrongful discharge based on his allegations.  Rather, the question is whether the United States has waived its sovereign immunity from suit based on an action for wrongful discharge.

The New Mexico tort of wrongful discharge is an intentional tort.  The United States has thus not waived immunity in the FTCA for a claim of wrongful discharge. The Court, therefore, lacks jurisdiction over Merkel's cause of action.[3]

## II.    MERKEL'S CLAIMS ALSO FALL WITHIN THE INTERFERENCE WITH CONTRACTUAL RELATIONS EXCEPTION.

Even if the intentional tort exception did not apply to bar Merkel's claims, the Court believes that the interference with contractual relations exception applies.  The United States contends that the Court should dismiss this matter because it is a claim for interference with contractual relations. Merkel agrees that the FTCA exempts such claims from its waiver of immunity.  Merkel asserts, however, that he is not alleging interference with contractual relations, but the tort action of wrongful or retaliatory discharge.   Merkel resists the United States' attempt to redefine his claims as interference with contractual relations.

Merkel argues that he is making a claim for violation of the tort of retaliatory discharge in violation of the public policy of New Mexico, and the Court should, just as the court in Socialist Workers Party v. Attorney General of the United States, not allow the United States to recharacterize

---

[3] The Court notes that, in addition to the jurisdictional infirmities of Merkel's case caused by the FTCA, his claim fails to state a claim for which the Court can grant relief.  While Merkel states, in his response, that his claim is for wrongful discharge, an intentional tort, he alleges in his Complaint that the two employees acted negligently.  He thus has not alleged the necessary wrongful intent on the part of the United States, the Court could, therefore, also dismiss his action under rule 12(b)(6) for failure to state a claim.  C.f. Ledbetter v. Webb, 103 N.M. 597, 602-603, 711 P.2d 874, 879-80 (N.M. 1985)(holding that, where intentional conduct is established, it is error to conclude the same conduct amounts to negligence).

his claim.  Merkel indicated in his Complaint that he was bringing a claim for wrongful discharge, a tort, and not for any other claim.  See Complaint, ¶ 1 (citing <u>Vigil v. Arzola</u> as a basis of his complaint).

The Court agrees that Merkel does not refer to his claim as one for interference with contractual relations.  The case law is clear, however, that the FTCA's interference with contractual relations exception is to be read broadly.  Merkel's claim is that the United States interfered with his employment rights -- this is the kind of interference with a "prospective pecuniary advantage" that Judge Johnson discussed in <u>Holmes Herefords, Inc. v. United States,</u> and is similar to the allegations that the United States interfered with the plaintiff's ability to seek future employment which the court in <u>Bell v. United States</u> held that § 2680(h) bars.  The Court, therefore, believes that Merkel's claims fall within a broad reading of the FTCA's interference with contractual relations exception and are thus jurisdictionally barred.

**III.   ABEITA'S DECISION TO ADVISE MERKEL'S EMPLOYER OF MERKEL'S ALLEGED BEHAVIOR BECAUSE OF CONCERNS FOR THE PILOT'S SAFETY WAS A DISCRETIONARY DECISION.**

Even if neither the intentional tort exception nor the interference-with-contractual-relations exception applies, the actions that Merkel complains of constituted discretionary functions and that exception thus applies.  The Court's first determination in looking at whether the discretionary function exception applies is to determine whether the function in question was "a matter of judgment or choice for the acting employee."  <u>Berkovitz v. United States</u>, 486 U.S. 531, 536 (1988).  Merkel's allegation is that the United States' employees falsely reported his conduct to his employer in an effort to retaliate against him for his statements that he intended to submit a safety report.  The conduct that Abeita and Garcia reported to Merkel's employer involved actions they felt jeopardized

-18-

Merkel's safety as well as the safety of the other pilots he worked with.  The decision whether to report conduct to an employer based on a question of safety is a matter of judgment that is discretionary.

The Court must then consider whether this exercise of judgment was based on considerations of public policy.  A straightforward consideration of Merkel's allegations requires the Court to determine that the United States employees' decision whether to communicate the conduct of one employee which implicates the safety of other employees involves considerations of public policy.  Whether the employees reported Merkel's conduct accurately is not the question for the Court's determination at this stage.  The concern is whether the United States has waived its immunity for claims arising from the actions of its employees in like circumstances.  The Court thus believes that Abeita's and Garcia's actions in this case are the type of actions that Congress sought to protect the United States from liability.  The discretionary function exception, therefore, also applies, barring Merkel's claims under the FTCA.

Because Merkel's claims fall within each of these exceptions to the FTCA's waiver of sovereign immunity, the Court lacks jurisdiction to hear his claims.  The Court will, therefore, grant the United States' motion to dismiss.[4]

## IV.   THE COURT WILL DENY THE UNITED STATES' REQUEST FOR SANCTIONS UNDER RULE 11.

In its brief, the United States asserted: "If Rule 11(b)(2)(3), F.R.Civ.P., has any import whatsoever, Defendant asserts that costs should be recoverable."  Memorandum in Support of

---

[4] The United States' filed its motion for default judgment stating that the time for filing a response to its motion to dismiss had passed without Merkel filing a response.  Since that time, Merkel has filed his response, and the Court has considered all of his arguments both in the briefing and at the hearing on these motions.  The Court will, therefore, deny the motion for default judgment.

Motion to Dismiss at 5, filed April 13, 2004 (Doc. 9).  As noted above, rule 11(b) sets forth standards that an attorney must follow when submitting materials to the court.  The United States represents that it provided Merkel with the statutory authority barring his claim and a research lead.  The United States requested dismissal before expending resources to draft its motion and brief.  The United States contends that, if the Court grants this motion, it will file a motion to recover costs.

The United States did not, however, follow the procedures required by rule 11 for seeking sanctions.  Motions for sanctions must be set out separately from other motions -- not, as here, contained within another motion -- and must include specific allegations as to the conduct allegedly in violation of rule 11.  It also must be first served on the respondent and not filed for 21 days.  The United States did not follow either of these procedures.  The Court will, therefore, deny the motion for sanctions pursuant to rule 11(b).

**IT IS ORDERED** that the Defendant's Motion to Dismiss is granted in part and denied in part.  The Plaintiff's Complaint is dismissed with prejudice.  The Defendant's Motion for Entry of Default Judgment and request for sanctions are denied.


_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Steven K. Sanders
Donald Sears
Steven K. Sanders and Associates, L.L.C.
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

David C. Iglesias
  United States Attorney
Raymond Hamilton
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Defendant*